# Exhibit 1

FILED
TONI L. HELLON
CLERK; SUPERIOR COURT

2/5/2018 7:57:56 PM

BY: ALAN WALKER
DEPUTY

Case No. C20180578
HON. JEFFREY T. BERGIN

Laurence M. Berlin, Esq.

1431 E. Adelaide Drive
Tucson, AZ 85719
(520) 615-0034
State Bar of Arizona # 006558
PCC# 3984
        and
P.O. Box 685
Reserve, New Mexico 87830
(575) 533-6688
State Bar of New Mexico # 7097

Attorney for Plaintiffs

## SUPERIOR COURT FOR ARIZONA
## PIMA COUNTY

| | |
|---|---|
| EDWARD NEUFANG and VIRGINIA NEUFANG, a married couple; | Case No. |
| Plaintiffs, | |
| vs. | COMPLAINT |
| SAFECO INSURANCE COMPANY OF AMERICA, an insurance company doing business in Arizona; JANE AND JOHN DOES I-V; and ABC CORPORATE ENTITIES I-V; | [Breach of Contract, Negligence, Bad Faith, Misrepresentation, Fraud, and Consumer Fraud] |
| | Assigned to Hon.: |
| Defendants. | |

Plaintiffs allege:

### INTRODUCTION

1.      This case arises from Defendant Safeco's failure and refusal reasonably to

investigate, assess and pay Plaintiffs' underinsured motorist claim. Plaintiffs' claim arises

from an incident in which Edward Neufang was injured in a car crash that was the other

driver's fault. The other driver's insurance carrier paid its policy limit, but the driver was underinsured. Edward's injuries are permanently disabling and destroyed his ability to care safely for his wife, a stroke survivor for whom he provided significant care and protection until he was injured. Due to Ed's injury, Virginia has had to be relocated and arrangements made for her to receive the care and protection that her husband is no longer able to provide. Thus, Ginny's assistance and safety now comes at substantial emotional and financial costs that are still accruing. Safeco's failure to compensate the Neufangs pursuant to their policy continues to exacerbate their damages.

## PARTIES AND JURISDICTION

2. Plaintiffs Edward Neufang and Virginia Neufang are a married couple. They were married at the time of the incident(s) alleged herein and at all times material hereto. They were residents of Pima County, Arizona, at the time of the incident underlying this Complaint (i.e., the crash). Edward has remained a resident of Pima County, Arizona, at all times material hereto and Virginia moved to Georgia as result of physical damage sustained by her husband in the underlying incident.

3. Defendant Safeco Insurance Company of America is a for profit insurance company doing business in Pima County, Arizona, at all times material hereto.

4. All acts and omissions complained of herein occurred in Pima County, Arizona. The insurance was purchased and obligations under the insurance contract were to be performed in Pima County, Arizona.

5. The true identities of Defendants Jane and John Does I-V are not presently known to Plaintiffs or their counsel. This complaint will be amended to reflect their true identities when and as appropriate in the course of discovery and preparation for trial.

2

6.      The true identities of ABC Corporate Entities I-V are not presently known to Plaintiffs or their counsel. This complaint will be amended to reflect their true identities when and as appropriate in the course of discovery and preparation for trial.

7.      All Defendants were the agents, ostensible agents, and/or employees, each of the others, and were acting in the course and scope of that agency, ostensible agency, and/or employment at all times material hereto.

8.      This Complaint is to be read as an integrated whole in which each allegation applies to all causes of action.

## FACTS COMMON TO ALL CAUSES OF ACTION

9.      Initially, Plaintiffs' claims for damages arose from injuries sustained by Edward Neufang in a car crash on or about April 3, 2014.

10.     Edward Neufang was 79 years old at the time of the crash.

11.     Plaintiff Edward Neufang's injuries from the crash include, but are not limited to, a broken breastbone (i.e., fractured sternum).

12.     Plaintiffs Edward and Virginia Neufang (hereinafter "Ed" and "Ginny") have been married for almost 40 years.

13.     Ginny is the survivor of a stroke, in 2004, which left her permanently impaired, including but not limited to problems with balance, wandering and falling as well as cognitive and other issues that require both protection and assistance with her activities of daily living.

14.     Ed remained Ginny's protector and caregiver until his broken breastbone disabled him.

3

15.     On May 21, 2014, approximately seven weeks after the collision, Ed's chest pain was diagnosed in a hospital emergency department in Tucson as a still "acute" fractured sternum, resulting from the crash.  Ginny was with him at the emergency department.  The treating physicians instructed him not to lift more than about 20-30 lbs, that it would be dangerous, and that it would likely remain so due to his age.

16.     The blessings of growing old carry with them the burdens of progressive skeletal degeneration and handicapped regeneration.  In elderly patients, bone-healing rates are conditioned by cellular and molecular alterations to bone tissue that result in a progressive deterioration of fracture healing ability.  In the elderly, after fracture there is increasing risk of refracture and premature mortality.

17.     The strength of Plaintiff Edward Neufang's sternum has not and is not reasonably expected to return to its *status quo ante*.

18.     In earlier times, Ed had been a United States Marine, a body builder, and a stuntman, as well as engaging in other physical activities.

19.     Until being injured in the crash on April 3, 2014, Ed and Ginny lived together in the home that Ed literally built for them with his own hands on 10 acres. There, Ed maintained the building and grounds as well livestock including several horses. In addition to having the strength to lift Ginny and to protect her from falls, etc., Ed did things that included lifting and stacking large (i.e., heavy and awkward) bales of hay, saddling and unsaddling their horses with a 60 pound saddle as well as riding them without fear of posting or jostling, exercising with his set of weights, helping Ginny plant and maintain gardens, etc., etc.  Ed has been unable to perform those tasks, and others, since the car crash because of the damage to his broken breastbone sustained in the crash.

4

20.     As a direct and proximate result of Ed's broken breastbone, he was no longer safely able to protect and care for Ginny or to manage significant aspects of maintaining their home, grounds, and livestock.

21.     As a further direct and proximate result of Ed's broken breastbone, Ginny had to be relocated to Georgia to receive care and protection from her daughters. Initial costs of acquiring and setting up a place for Ginny to live with a caregiver daughter exceeded $40,000.00 (Forty Thousand Dollars).  The ongoing and accruing cost for Ginny's daughter to live with her in order to replace the protection and care that Ed can no longer provide averages in excess of $1,000.00 (One Thousand Dollars) per month and currently totals in excess of $45,000.00 (Forty Five Thousand Dollars).  Fair market value of the protection and care being provided by Ginny's daughter is substantially greater.

22.     The need to relocate Ginny to Georgia has resulted in emotional distress, anxiety, and inconvenience for both Ed and Ginny.  Further, it has resulted in Ed and Ginny each suffering losses of their peace of mind and security as well as profound losses of their enjoyment of life.

23.     The need to relocate Ginny to Georgia has resulted in Ed's and Ginny's losses and/or diminution of some of the intangible values of a relationship, including companionship and affection as well as Ginny's loss of her husband's care, comfort, society, support and protection. I.e., they have suffered and continue to suffer a mutual loss of consortium.

24.     Approximately a year after the crash and a few months after Ginny was moved to Georgia, the other driver's insurance company (Allstate) paid Ed and Ginny its policy limit of $25,000.00 (Twenty Five Thousand Dollars) as well as having paid for Ed's

5

and Ginny's car. They did so without any litigation, recognizing that the value of Ed's and Ginny's claim was well in excess of their coverage; i.e., the driver at fault was underinsured.

25.     The policy of insurance that Safeco sold Plaintiffs includes underinsured motorist coverage in the amount of $100,000.00 (One Hundred Thousand Dollars) that is applicable to this claim.

26.     Plaintiff Ed Neufang promptly reported the crash to Safeco's broker/agent and staff who sold Plaintiffs the insurance at issue. They arranged for Safeco to take Ed's recorded statement five days after the collision. It was not yet known that Ed's sternum had been fractured.

27.     Later, during Safeco's processing of Plaintiffs' underinsured motorist claim, Safeco's broker/agent and staff who sold Plaintiffs the insurance at issue, and who were personally familiar with Ed's circumstances, made statements to Safeco's investigator(s). Safeco prohibited them from discussing the matter with Plaintiffs' counsel.

28.     On information and belief, Safeco's broker/agent and staff provided information to Safeco that was supportive of the Neufangs' underinsured motorist claim.

29.     Safeco's purported investigation of Plaintiffs' underinsured motorist claim has been replete with unreasonable positions, unnecessary delays, false pretenses and false statements, concealments and other machinations to avoid the fair, diligent and good faith investigation, processing and payment of Plaintiffs' underinsured motorist claim. Said machinations include, but are not limited to:

> a. Falsely denying that Ginny's relocation to Georgia was *subsequent* to Ed being injured, including the knowing and intentional

6

misrepresentation that Ed said Ginny was already living in Georgia in the recorded statement taken by Safeco's investigator five days after the collision.

    i. Notwithstanding numerous requests and promises that a copy of the statement be provided to Ed's counsel, it took approximately two years for Safeco to produce a copy of the transcript.[1]

    ii. The transcript did *not* confirm Safeco's oft-repeated false statement. On the contrary, Safeco's interviewer did not ask about Ed's wife. Nevertheless, in a rambling answer to another question, Ed volunteered that Ginny was in Georgia because he'd been in the hospital a couple of weeks earlier "and I, *I take care of her all the time and I have her coming back . . .*" (Emphasis added) Indeed, Ginny did return and stayed several months -- long enough for the fractured sternum to be discovered, for it to become clear that it was unsafe for Ed to continue to provide Ginny's necessary care and protection and, then, to arrange for Ginny's relocation.

b. Failing to give credence to and to act reasonably in response to the Declaration of the Honorable Judge Emojean Girard (Retired).

c. Failing to acknowledge and give credence to the record of the care and treatment of Ed's fractured sternum at the Veterans Administration Hospital, including the record of June 17, 2014.

---

[1]     A copy of the actual recording still has not been produced.

d. Failing to honor the arbitration provision of the insurance policy; i.e., as a matter of Safeco's secret policy, never agreeing to arbitration notwithstanding its contractual provision representing that arbitration was an option if both parties agree.

e. Failing to act reasonably in response to information from Safeco's own broker/agent and his staff; people who were personally familiar with Ed and Ginny's circumstances resulting from the collision.

f. Failing to act reasonably in response to a letter from Ginny's daughter who became her caregiver.

g. Delaying approximately two years before questioning the disabling effect of Ed's injury and then failing and refusing to proceed in a manner consistent with the Arizona Rules of Civil Procedure or cooperatively with Plaintiffs' counsel. Instead, Safeco sought to manipulate an Independent Medical Examination in a fashion that was subject to abuse, unreasonable, unfair, and contrary to the provisions of Rule 35 of the Arizona Rules of Civil Procedure.

h. Acknowledging the validity of Plaintiffs' claim but failing to negotiate fairly and in good faith.

## BREACH OF CONTRACT

30. There has been a valid insurance agreement between Plaintiffs and Defendant at all times material hereto. (I.e., auto insurance policy # Y7636059)

31. Plaintiffs have complied with all of their requirements pursuant to the insurance policy.

8

32.    Defendant is in breach of its insurance agreement due to the sham that is its arbitration clause.

33.    Defendant is in breach of the insurance agreement due to its failure diligently and fairly to investigate and process Plaintiffs' underinsured motorist claim and by failing and refusing to pay, or to offer, appropriate compensation to Plaintiffs.

34.    As a direct and proximate result of Safeco's breach of the insurance contract, Plaintiffs have been wrongfully deprived of the benefit of their bargain; i.e., fair compensation for their damages. Further, Ed and Ginny have suffered and continue to suffer increased emotional distress, anxiety and inconvenience that the underinsured motorist coverage that Safeco sold them is intended to prevent or minimize.

## NEGLIGENCE

35.    Defendant Safeco has been under a duty to conduct itself reasonably at all times material hereto. That duty includes, but is not limited to, the prompt and diligent investigation, assessment, and payment of Plaintiffs' underinsured motorist claim.

36.    Defendant has failed and refused to act reasonably, including but not limited to it failures and refusals to investigate, assess, process and pay Plaintiffs' underinsured motorist claim promptly and diligently.

37.    As a direct and proximate result of Defendants' failures reasonably and diligently to investigate, assess, process and pay Plaintiffs' underinsured motorist claim, Plaintiffs have sustained past and future mental, emotional, physical, and economic harm including, but not limited to, failure to pay reasonable compensation resulting in the need to arrange and pay for care, protection and lodging for Plaintiff Virginia Neufang; the

9

need to pay for assistance maintaining Plaintiffs' home, grounds and livestock; and losses of consortium and of enjoyment of life.

## BREACH OF THE COVENANT OF
## GOOD FAITH AND FAIR DEALING
### (BAD FAITH)

38.    The covenant of good faith and fair dealing is an implied provision of the insurance agreement between Plaintiffs and Defendant.

39.    At all times material hereto, Defendant Safeco owed and continues to owe Plaintiffs Ed and Ginny a duty of good faith and fair dealing.

40.    There is a special relationship between an insurance company and its insured. That special relationship exists because the object of the insurance contract is more than just of a commercial nature but also involves the insured purchasing peace of mind and security.

41.    Defendant breached its duty of good faith and fair dealing by failing and refusing to act reasonably toward its insured's. In that respect, Defendant's acts and omissions include but are not limited to its unreasonable investigation and assessment as well as its failure and refusal to pay or to offer Plaintiffs reasonable compensation, and by its sham arbitration clause.

42.    Defendant's acts and omissions constituting breach of the covenant of good faith and fair dealing were done with Safeco's knowledge that it was acting unreasonably or were done with reckless disregard as to the reasonableness of its actions and the consequences for its insureds.

43.    As a direct and proximate result of Defendant Safeco's breach of its duty of good faith and fair dealing, Plaintiffs are still owed the unpaid benefit under the policy.

44.     As a further direct and proximate result of Defendant Safeco's breach of the its duty of good faith and fair dealing, it has failed and refused to provide the peace of mind and security that Plaintiffs' underinsured motorist coverage is intended to provide. Instead, Safeco's breach of its duty of good faith and fair dealing has caused Plaintiffs to suffer the heightened emotional distress, anxiety and inconvenience that their underinsured motorist coverage is intended to prevent or minimize.

## MISREPRESENTATION AND FRAUD

45.     At all time material hereto, Defendant Safeco and it insurance policy have represented to Plaintiffs, *inter alia*, that it would investigate and process any claim diligently and promptly and that, in the event of disagreement over the value of a claim by Plaintiffs, arbitration would be available to the extent expressed in the insurance policy.[2]

46.     Defendant Safeco's representations, inter alia, that it would investigate and process claims diligently and promptly and that arbitration would be available on the terms stated in its insurance policy were false.

47.     Defendant Safeco's representations, inter alia, that it would investigate and process diligently and promptly and that arbitration would be available as stated in its insurance policy are significant representations such that disclosure that either or both were untrue would have significantly altered the value and usefulness of the policy being sold by Safeco to the Neufangs.

48.     Defendant Safeco's broker/agent who explained the policy provisions and sold the policy to Plaintiffs was likely ignorant of the falsity of Safeco's representations

---

[2]     The misrepresentations alleged herein were either by stated representations or by material omissions of the truth.

11

and its misleading omissions. At all times material hereto, however, Safeco knew it had an internal policy of not agreeing to arbitration when it is requested under the insurance policy and knew that its investigations and processing would be neither prompt nor diligent.

49. Safeco, including its broker/agent, intended that Plaintiff Edward Neufang should rely on the representations of prompt and diligent investigation and processing of claims and the availability of arbitration as described in the policy.

50. At all times material hereto, Plaintiff Edward Neufang was ignorant of the fact that the representations of prompt and diligent investigation and processing and available arbitration were false.

51. At all times material hereto, Plaintiff Edward Neufang relied on the truth of the representations of prompt and diligent investigation and processing and that arbitration would be available in accordance with the terms of policy.

52. At all times material hereto, Plaintiff Edward Neufang had a right to rely on the representations of prompt and diligent investigation and processing and that arbitration would be available in accordance with the terms of policy.

53. As a direct and proximate result of Plaintiff's reliance on Defendant Safeco's representations that it would investigate and process claims promptly and diligently and that arbitration was available, Ed and Ginny have been injured by their excessive and ongoing separation and the related expenses, which are grossly enhancing their damages.

12

## CONSUMER FRAUD

54.   In connection with its sale of the insurance policy to the Neufangs, and apparently unbeknownst to the broker/agent and staff that sold and serviced this policy, Defendant Safeco used deception, concealment, false premises, false statements, and material omissions in its sale of the policy to Plaintiffs. Without limitation, said unlawful practices include failure to advise of the unavailability of arbitration; that investigation, assessment and payment would be unreasonably protracted and disconnected from the evidence and the truth; and that offers and/or negotiations would not be calculated and/or conducted reasonably.

55.   Safeco intended that Plaintiffs and others rely on its unlawful practices, including but not limited to its representations of diligent, timely and fair consideration and payment of claims.

56.   As a direct and proximate result of Plaintiff Edward Neufang's reliance on Defendant Safeco's stated misrepresentations and material omissions, Ed and Ginny have suffered and continue to suffer damages.

## DAMAGES

57.   As direct and proximate results of Defendant Safeco's wrongdoing, Plaintiffs Ed and Ginny Neufang have suffered and continue to suffer significant damages, well in excess of the jurisdictional threshold of this Court:

> i. Ed has sustained permanent physical, mental and emotional injuries, disability, and increased vulnerability to further injury and damage for which Safeco has wrongfully failed and refused to pay reasonable compensation;

13

    ii.  Ed and Ginny have incurred medical and therapeutic expenses in the past, presently in excess of $12,000.00 (Twelve Thousand Dollars) for which Safeco has failed and refused to pay reasonable compensation, and they will incur further medical and therapeutic expenses in the future;

    iii.  Ed and Ginny Neufang have been separated;

    iv.  Ed and Ginny and her daughters have been required to relocate Ginny to Georgia and arrange for her care and protection by her daughter, all at significant and accruing expense, presently in excess of $85,000.00 (Eighty Five Thousand Dollars);

    v.  The need to relocate Ginny to Georgia has resulted in emotional distress, anxiety, inconvenience, and expense for both Ed and Ginny. Further, it has resulted in Ed and Ginny each suffering a loss of consortium, a loss of peace of mind and security, a loss of companionship, and a profound loss of enjoyment of life, all in amounts to be proven at trial.

58.    Defendant Safeco's wrongful acts and omissions, including but not limited to its bad faith and fraud, were done and are being done intentionally; in deliberate disregard of the substantial risks of significant harm to Ed and Ginny, and with an "evil mind".

WHEREFORE, Plaintiffs request judgment including but not limited to the following relief:

    a.  Just and reasonable consequential damages, in an amount in excess of the jurisdictional limits of this Court, to be proven at trial;

14

b.   Just and reasonable compensatory damages, in an amount in excess of the jurisdictional limits of this Court, to be proven at trial;

b.   Just and reasonable exemplary or punitive damages in an amount to be proven at trial;

c.   Costs of litigation and attorney's fees incurred herein to the extent permitted by law and in equity; and

d.   Such further and other relief as this Honorable Court may deem appropriate.

RESPECTFULLY SUBMITTED this 6th day of February 2018.

/ s / Laurence M. Berlin

LAURENCE M. BERLIN
Attorney for Plaintiff

15